## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PETER VOTTO,<br><br>      Plaintiff,<br><br>  v.<br><br>FIRST BANCORP, RICHARD H. MOORE JAMES C. CRAWFORD, III, DANIEL T. BLUE, JR., MARY CLARA CAPEL, SUZZANE DEFERIE, ABBY J. DONNELLY, JOHN B. GOULD, MICHAEL G. MAYER, O. TEMPLE SLOAN, III, FREDERICK L. TAYLOR II, VIRGINIA C. THOMASSON, and DENNIS A. WICKER,<br><br>      Defendants. | Case No.:<br><br>JURY TRIAL DEMANDED<br><br>**COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS** |

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## BACKGROUND

1.     This action concerns a proposed transaction ("Proposed Transaction") announced on June 1, 2021, pursuant to which First Bancorp, ("First Bancorp" or the "Company") will merge with Select Bancorp, Inc. ("Select").

2.     On June 1, 2021, First Bancorp's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement").  Pursuant to the terms of the Merger Agreement, each share of Select will be converted into approximately 0.408 shares of First Bancorp common stock (the "Merger Consideration").

3.      On July 2, 2021, in order to convince First Bancorp's Shareholders to vote in favor of the Proposed Transaction, Defendants filed a materially incomplete and misleading S-4 Registration Statement (the "Registration Statement") with the United States Securities and Exchange Commission ("SEC").

4.      The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading. Accordingly, Plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Registration Statement.

5.      In addition, a special meeting of First Bancorp's stockholders will be held to vote on the Proposed Transaction (the "Stockholder Vote").  It is therefore imperative that the material information that has been omitted from the Registration Statement is disclosed prior to the Stockholder Vote so First Bancorp's stockholders can properly exercise their corporate voting rights and make an informed decision on whether to vote in favor of the merger.

## JURISDICTION & VENUE

6.      This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act and 28 U.S.C. §1331 because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

7.      This Court has jurisdiction over Defendants because each defendant is either a corporation that conducts business in this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because, among other things: (a) the conduct at issue

will have an effect in this District; (b) a substantial portion of the transactions and wrongs complained of herein, occurred in this District; and (c) certain Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.  Additionally, the Company's shares trade on the NASDAQ, which is headquartered in this District.

## THE PARTIES

9.      Plaintiff is, and has been continuously throughout all times relevant hereto, a First Bancorp shareholder.

10.     Defendant First Bancorp is a Delaware corporation and a party to the Merger Agreement.  First Bancorp shares are traded on the NASDAQ under the ticker symbol "FBNC."

11.     Defendant Richard H. Moore is the Company's Chief Executive Officer and a director of the Company.

12.     Defendant James C. Crawford, III is Chairman of the Board and a director of the Company.

13.     Defendant Daniel T. Blue, Jr. is a director of the Company.

14.     Defendant Mary Clara Capel is a director of the Company.

15.     Defendant Suzanne DeFerie is a director of the Company.

16.     Defendant Abby J. Donnelly is a director of the Company.

17.     Defendant John B. Gould is a director of the Company.

18.     Defendant G. Mayer is a director of the Company.

19.     Defendant O. Temple Sloan, III is a director of the Company

20.     Defendant Frederick L. Taylor II is a director of the Company.

21.     Defendant Virginia C. Thomasson is a director of the Company.

22.     Defendant Dennis A. Wicker is a director of the Company.

## FACTS

23.     First Bancorp is a bank holding company headquartered in North Carolina. On March 31, 2021, First Bancorp had total consolidated assets of approximately $7.7 billion, total loans of approximately $4.6 billion, total deposits of approximately $6.7 billion, and shareholders' equity of approximate $0.9 billion. First Bancorp's principal activity is the ownership and operation of First Bank, a state-chartered bank with its main office in Southern Pines, North Carolina.

24.     Select is a bank holding company headquartered in North Carolina. On March 31, 2021, Select had total consolidated assets of approximately $1.8 billion, total loans of approximately $1.3 billion, total deposits of approximately $1.6 billion, and shareholders' equity of approximate $212 million. Select's principal activity is the ownership and operation of Select Bank, a state-chartered bank with its main office in Dunn, North Carolina

25.     On June 1, 2021, First Bancorp's Board caused the Company to enter into the Merger Agreement.

26.     According to the press release announcing the Proposed Transaction:

**SOUTHERN PINES, NC and DUNN, NC, June 1, 2021** – First Bancorp (Nasdaq: FBNC), the parent company of First Bank, and Select Bancorp, Inc. ("Select") (Nasdaq: SLCT), the parent company of Select Bank and Trust Company ("Select Bank"), announced today the signing of a definitive merger agreement under which First Bancorp will acquire Select in an all-stock transaction with a total current value of approximately $314.3 million, or $18.10 per share, based on First Bancorp's stock price as of May 28, 2021.

The merger agreement has been unanimously approved by the boards of directors of each company. The transaction is expected to close in the fourth quarter of 2021 and is subject to customary conditions, including shareholder and regulatory approval. Subject to the terms of the merger agreement, Select shareholders will

receive 0.408 shares of First Bancorp's common stock for each share of Select common stock.

Select Bank currently operates twenty-two banking locations in North Carolina, South Carolina, and Virginia and has the leading community bank market share in Fayetteville, NC and a presence in the key North Carolina growth markets of Raleigh, Charlotte, and Wilmington. As of March 31, 2021, Select reported assets of $1.8 billion, loans of $1.3 billion, and deposits of $1.6 billion. The acquisition complements First Bank's existing footprint and provides entry into several new markets.

***

Keefe, Bruyette & Woods, Inc. served as financial advisor to First Bancorp and Brooks, Pierce, McLendon, Humphrey & Leonard, LLP provided legal counsel. Raymond James & Associates, Inc. served as financial advisor to Select Bancorp, Inc., and Wyrick Robbins Yates & Ponton LLP served as legal counsel.

***

27.      The Merger Consideration is unfair because, among other things, the intrinsic value of the Company is in excess of the amount the Company's stockholders will receive in connection with the Proposed Transaction.

28.      It is therefore imperative that the Company's shareholders receive the material information that Defendants have omitted from the Registration Statements that they can meaningfully assess whether the Proposed Transaction is in their best interests prior to the vote.

29.      Section 7.3 of the Merger Agreement has a "no solicitation" clause that prevents First Bancorp from soliciting alternative proposals and constraints its ability to negotiate with potential buyers:

**7.3  Other Offers, etc.**

(a)   From the date of this Agreement through the first to occur of the Effective Time or the termination of this Agreement, each SB Entity shall not, and shall use its commercially reasonable efforts to cause its Affiliates and Representatives not to, directly or indirectly (i) solicit, initiate, or encourage, induce or knowingly facilitate, the making, submission, or announcement of any proposal that constitutes an Acquisition Proposal, (ii) participate in any discussions (except to notify a third

party of the existence of restrictions provided in this Section 7.3) or negotiations regarding, or disclose or provide any nonpublic information with respect to, or knowingly take any other action to facilitate any inquiries or the making of any proposal that constitutes an Acquisition Proposal, (iii) enter into any agreement (including any agreement in principle, letter of intent or understanding, merger agreement, stock purchase agreement, asset purchase agreement, or share exchange agreement, but excluding a confidentiality agreement of the type described below) (an "Acquisition Agreement") contemplating or otherwise relating to any Acquisition Transaction, or (iv) propose or agree to do any of the foregoing; provided, however, that prior to receipt of the Requisite SB Shareholder Approval, this Section 7.3 shall not prohibit a SB Entity from furnishing nonpublic information regarding any SB Entity or other access to, or entering into a confidentiality agreement or discussions or negotiations with, any Person or Group in response to a bona fide, unsolicited written Acquisition Proposal submitted by such Person or Group (and not withdrawn) if and only if: (A) no SB Entity or Representative or Affiliate thereof shall have violated any of the restrictions set forth in this Section 7.3 (other than an unintentional violation that did not, directly or indirectly, result in the submission of such Acquisition Proposal), (B) SB's board of directors shall have determined in good faith, after consultation with the SB Financial Advisor (or such other financial advisor as SB may use) and outside legal counsel, that such Acquisition Proposal constitutes or is reasonably likely to result in a Superior Proposal, (C) SB's board of directors concludes in good faith, after consultation with its outside counsel, that the failure to take such action would be inconsistent with its fiduciary duties under applicable Law to SB and its shareholders, (D) SB receives from such Person or Group an executed confidentiality agreement containing terms no less favorable to SB than the confidentiality terms of this Agreement, and (E) contemporaneously with furnishing any such nonpublic information to such Person or Group, SB furnishes such nonpublic information to Buyer (to the extent such nonpublic information has not been previously furnished by SB to Buyer). In addition to the foregoing, SB shall provide Buyer with at least three (3) days' prior written notice of a meeting of SB's board of directors at which meeting SB's board of directors is reasonably expected to resolve to recommend the Acquisition Agreement as a Superior Proposal to its shareholders, and SB shall keep Buyer informed on a prompt basis of the status and material terms of such Acquisition Proposal, including any material amendments or proposed amendments as to price and other material terms thereof.

30.     Defendants filed the Registration Statement with the SEC in connection with the Proposed Transaction.

31.     As alleged herein, the Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement and misleading.

32.     First, the Registration Statement omits First Bancorp's, Select's, and the

combined company's financial projections.

33.     The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the companies' financial advisor in support of any fairness opinion.

34.     Second, the Registration Statement omits material information regarding the analyses performed by the Company's financial advisor Keefe, Bruyette & Woods, Inc. ("KBW") and Select's financial advisor Raymond James & Associates, Inc. ("Raymond James") in connection with the Proposed Transaction.

35.     With respect to KBW's *First Bancorp Selected Companies Analysis*, the Registration fails to disclose the individual multiples and metrics for the companies observed in the analysis.

36.     With respect to KBW's *Select Companies Analysis,* the Registration fails to disclose the individual multiples and metrics for the companies observed in the analysis.

37.     With respect to KBW's *Select Transaction Analysis,* the Registration fails to disclose the individual multiples and metrics for the transactions observed in the analysis.

38.     With respect to KBW's *Relative Contribution Analysis*, the Registration Statement fails to disclose (i) the publicly available consensus "street estimates" of First Bancorp and (ii) the financial and operating forecasts and projections of Select provided by First Bancorp management (which were prepared by Select management and then adjusted by First Bancorp management).

39.     With respect to KBW's *Pro Forma Financial Impact Analysis*, the Registration Statement fails to disclose (i) the closing balance sheet estimates as of December 31, 2021 for First Bancorp and Select, (ii) the "street estimates" used in the analysis, (iii) the financial and operating

forecasts and projections of Select provided by First Bancorp management (which were prepared by Select management and then adjusted by First Bancorp management), and (iv) the pro forma assumptions (including, without limitation, the cost savings and related expenses expected to result from the merger as well as certain purchase accounting adjustments and other merger-related adjustments and restructuring charges assumed with respect thereto) provided by First Bancorp management.

40.     With respect to KBW's, *First Bancorp Dividend Discount Model Analysis*, the Registration Statement fails to disclose (i) the "street estimates" used in the analysis, (ii) the assumed First Bancorp long-term growth rates provided by First Bancorp management, (iii) KBW's basis to assume discount rates ranging from 8.0% to 12.0% and that First Bancorp would maintain a tangible common equity to tangible assets ratio of 8.00%, (iv) the present value of the implied future excess capital available for dividends that First Bancorp could generate over the period from December 31, 2021 through December 31, 2025, (v) the present value of First Bancorp's implied terminal value at the end of such period, and (vi) the individual inputs and assumptions underlying a multiple range of 12.0x to 16.0x for First Bancorp's 2026 earnings.

41.     With respect to KBW's, *Select Dividend Discount Model Analysis*, the Registration Statement fails to disclose (i) the financial and operating forecasts and projections relating to the earnings and assets of Select provided by First Bancorp management (which were prepared by Select management and then adjusted by First Bancorp management), (ii) the assumptions regarding cost savings and related expenses expected to result from the merger provided by First Bancorp management, (iii) KBW's basis to assume discount rates ranging from 8.5% to 12.5% and that Select would maintain a tangible common equity to tangible assets ratio of 8.00%, (iv) the present value of the implied future excess capital available for dividends that

Select could generate over the period from December 31, 2021 through December 31, 2026, (v) the present value of Select's implied terminal value at the end of such period, and (vi) the individual inputs and assumptions underlying a multiple range of 11.0x to 15.0x Select's estimated 2027 earnings.

42.     With respect to Raymond James' *Discounted Cash Flow Analyses of Select and FBNC*, the Registration Statement fails to disclose: (i) the cash flows used in the analyses, (ii) the individual inputs and assumptions underlying the discount rates, and (iii) Raymond James' basis for applying the multiples ranges used in the analyses.

43.     With respect to Raymond James' *Selected Companies Analyses of Select and FBNC*, the Registration Statement fails to disclose the individual multiples and metrics for the companies.

44.     With respect to Raymond James' *Selected Transaction Analysis*, the Registration Statement fails to disclose the individual multiples and metrics for the transactions.

45.     With respect to Raymond James' *Pro Forma Impact Analysis*, the Registration Statement fails to disclose: (i) closing balance sheet estimates used in the analysis; (ii) the projections used in the analysis; (iii) the pro forma adjustments; (iv) the extent to which the Proposed Transaction could be dilutive to Select's estimated TBV per share; and (v) the extent to which the Proposed Transaction could be accretive to Select's estimated 2022 and 2023 earnings per share and estimated 2022 dividends per share.

46.     Third, the Registration Statement fails to disclose the amount of compensation received by Raymond James for the past services it provided to the parties to the Merger Agreement and their affiliates.

47.     Fourth, the Registration Statement fails to disclose whether the Company entered

into any nondisclosure agreements that contained standstill and/or "don't ask, don't waive" provisions.

48.     Fifth, the Registration Statement fails to disclose the timing and nature of all communications regarding post-transaction employment, directorships, and benefits, including who participated in all such communications.

49.     The omission of the above-referenced material information renders the Registration Statement false and misleading.

50.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## CLAIMS FOR RELIEF

## COUNT I

## (AGAINST ALL DEFENDANTS FOR VIOLATIONS OF SECTION 14(a) OF THE EXCHANGE ACT AND RULE 14a-9 PROMULGATED THEREUNDER)

51.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

52.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, requires that Registration Statement communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

53.     Defendants issued the Registration Statement with the intention of soliciting stockholder First Bancorp for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the

10

Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

54.    In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  By virtue of their roles as officers and/or directors, each of the Individual Defendants were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders as required.

55.    The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in preparing and reviewing the Registration Statement.  Defendants were also negligent in choosing to omit material information from the Registration Statement nor failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully.

56.    The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law.

## COUNT II

## (AGAINST THE INDIVIDUAL DEFENDANTS FOR VIOLATIONS OF SECTION 20(a) OF THE EXCHANGE ACT)

57.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

58.     The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

59.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

60.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the

12

Registration Statement.

61.     In addition, as the Registration Statements forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

62.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

63.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

64.     Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.     Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: July 23, 2021

**MOORE KUEHN, PLLC**
*/s/Justin Kuehn*
Justin A. Kuehn
Fletcher W. Moore
30 Wall Street, 8th floor
New York, New York 10005
Tel: (212) 709-8245
jkuehn@moorekuehn.com
fmoore@moorekuehn.com
*Attorneys for Plaintiff*